## CIRCUIT COURT OF HENRICO COUNTY

Commonwealth of Virginia, ex rel.
Commissioner of Labor and Industry

    v.

Southern Brick Contractors, Inc.

September 25, 1987

Case No. A-2346

By JUDGE JAMES E. KULP

    This matter came before the Court as a result of an appeal from the General District Court to be heard de novo pursuant to § 40.1-49.5 of the Code of Virginia. After hearing evidence and argument of counsel, the Court granted the defendant's motion to strike and dismissed the citation. At the hearing the Court briefly stated its reasons for the decision, and advised that a written opinion more fully expounding upon the Court's reasons would be forthcoming.

    The Safety and Health Codes Board, with the advice of the Commissioner of Labor and Industry, is authorized to adopt rules and regulations "to further, protect and promote the safety and health of employees of places of employment over which it has jurisdiction and to effect compliance with the Federal Occupational Safety and Health Act of 1970." *See* 40.01-22(5). In fulfilling its mandate, the Board is to adopt the standard which assures to the extent feasible "that no employee will suffer material impairment of health or functional capacity." Section 40.1-22(5). Whenever possible the standard should be

expressed in terms of objective criteria and of the performance desired.

The Board has adopted the federal OSHA standards and by implication the interpretation placed on such standards by federal courts. In *Industrial Union v. American Petroleum*, 448 U.S. 607, 100 S. Ct. 2844 (1980) (plurality opinion), the Supreme Court noted that the legislative history of OSHA supported "the conclusion that Congress was concerned, not with absolute safety, but with the elimination of significant harm." 448 U.S. at 646, 100 S. Ct. at 2866.

On June 30, 1986, Cary Letellier, a compliance inspector for the Department of Labor and Industry, was making a planned inspection of a construction job at the State Fairgrounds located in Henrico County. Southern Brick was a subcontractor on this job, and Mr. Letellier presented his credentials to the job foreman for Southern Brick. During a walk around inspection, Mr. Letellier observed a STOW two bag mortar mixer in use. The mixer had a pile of sand and empty bags near it. The defendant's employee was walking around the mixer and while the mixer was in operation the cover for the end of the mixer was in the up position. The motor, gears and belts are located at the end of the mixer where the cover is located.

The citation, out of which this action arises, was issued for a violation of § 1926.300(b)(2), which provides as follows:

> Belts, gears, shafts, pulleys, sprockets, spindles, drums, fly wheels, chains, or other reciprocating, rotating or moving parts of equipment shall be guarded *if such parts are exposed to contact by employees or otherwise create a hazard*. Guarding shall meet the requirements as set forth in American National Standards Institute, B 15.1 - 1953 (R1958), Safety Code for Mechanical Power Transmission Apparatus. (Emphasis added)

In the Court's opinion § 1926.300(b)(2) is a general as opposed to a specific safety regulation. The Court's position is supported by the fact that the heading of Section 1926.300 is titled "General Requirements." Further-

more, § 1926.300(b)(2) does not require a guard for all belts, gears, etc., but requires guards only when such parts are exposed to contact by employees or otherwise create a hazard. Such a regulation therefore places a certain degree of discretion in the Commissioner in determining whether the regulation has been violated. The Commissioner's discretion is not without limitations, and "cannot be so broadly construed and applied as to deny [employers] reasonable notice of what safety precautions are required." *Bristol Steel and Iron Works v. O. S. & H. Review Comm'n*, 601 F.2d 717, 722 (4th Cir. 1979).

A violation of § 1926.300(b)(2) can occur only if the belts, gears, etc. are exposed to contact by employees or otherwise create a hazard. The American National Standards Institute defines the phrase "exposed to contact" to mean "that the location of an object is such that a person is likely to come into contact with it and be injured." ANSI Code at p. 11.

At the hearing, Mr. Letellier testified that he interpreted § 1926.300(b)(2) to require the issuance of a citation "if an accident was possible--one in a million." The Court finds that such an interpretation would give unbridled discretion to compliance inspectors implicating due process requirements, and would be no more than a "possibility" standard which "would permit this safety standard to be applied to conditions posing insignificant risks that are beyond the scope of the [OSHA] Act." *Pratt and Whitney Aircraft v. Secretary of Labor*, 649 F.2d 96, 104 (2d Cir. 1981).

Unlike many of the OSHA safety standards, Section 1926.300(b)(2) does not presume the existence of a safety hazard. *See Pratt and Whitney Aircraft v. Donovan*, 715 F.2d 57 (2d Cir. 1983). To establish a violation of Section 1926.300(b)(2), the Commissioner must show more than a mere possibility of injury. He must show that the potential hazard presents a significant risk of harm.

"Whether there exists a significant risk depends on the seriousness of the potential harm and the likelihood of that harm being realized." *Id*. at 64. The Commissioner, to meet his burden, must provide more than mere proof of the existence of a potential hazard.

In the present case, the Commissioner presented only the testimony of Mr. Letellier, photographs of the

mortar mixer and the safety standard. The photographs (Commonwealth exhibits 3 and 4) show that the gears and belts are recessed in the mixer's housing behind the motor. Mr. Letellier testified that the starter switch is from 2 to 2½ feet from the gears. The Commissioner concedes that prior to this citation no masonry contractor in Virginia had ever been cited for failure to guard mortar mixers. The Commissioner, however, refers to *Heimerman Masonry, Inc.*, 11 OSHC 171 (1983), and *Herman Krallman & Sons, Inc.*, 9 OSHC 1991 (1981), as cases wherein violations of 1926.300(b)(2) have been upheld where belts, etc. on mortar mixers have not been properly guarded. The Court finds these decisions unpersuasive. Neither of these decisions discuss whether this safety standard, as interpreted by the Commissioner, exceeds the scope of OSHA, which is the issue confronting this Court, and which has been discussed in detail by the Second Circuit Court of Appeals in *Pratt and Whitney, supra.*

The Commissioner also relies upon several products liability cases involving accidents by persons coming into contact with mortar mixers. These cases are distinguishable from the present case since they involve injuries from contact with the paddles of the machine or using a stick to short out the magneto. *See Bellart v. Martell*, 137 N.W.2d 729 (Wis. 1965) (paddles); *Stevens v. Chainbelt, Inc.*, 349 So. 2d 948 (Ct. App. La. 1977) (use of stick); *Centrello v. Basky*, 128 N.E.2d 80 (Ohio 1955) (paddles).

The Commissioner also cites *Przeradski v. Rexnord, Inc.*, Prod. Liab. Rep. (CCH) § 9545, p. 23, 387 (Mich. App. 1982), in which it appears that a woman got her hair caught in a moving part of a cement mixer while in the process of cleaning it. It is somewhat unclear what part of the mixer was involved in that incident, but even if the part involved was similar to those in this case, it shows only that it is *possible* to be injured.

While this Court may believe it would be prudent to have the guard closed while the mixer is in operation, this Court's beliefs cannot be substituted for evidence. The Court finds that the Commissioner's evidence in this case is insufficient to carry his burden of establishing a significant risk on the facts in this case.